missed appellant's RICO claims on a single, very narrow issue. That issue is that the predicate acts were part of a single transaction. The appellee's predicate acts were part of a single transaction. And therefore, they fell the pattern and continuity elements of a RICO claim. In seeing just one transaction, the court below avoided the aphoristic mistake of missing the forest for the trees. However, it made a mistake that is just as significant. It missed the trees for the forest. Appellee's engaged in a pattern of fraudulent activity extending over a period of nine years, multiple contractual relationships with at least two separate persons wholly distinct from one another who happen to be of blood relations to one another. In 2004, appellee defendant below Max Ham told one of the plaintiffs, and this was just one plaintiff, that he was licensed to sell crop insurance when he was not. How do you define a single transaction? What is a single transaction within the meaning of this case? Well, there's no case law from this court defining a single transaction. And we can look to the different cases decided by this court in getting some guidance from that. For example, just this year in Zastro, this court- I understand the cases, but I mean, you can't, what is your, as an advocate, what is your definition based upon a synthesis of the cases of a single transaction? I know a single transaction could not contemplate a wholly, two wholly and distinct contractual relationships. Holding that in this case, there is a single transaction is an irreconcilable anachronism. When you say that, go ahead, excuse me, go ahead. Because appellant Billy W. Shannon, his contractual relationship began at least as early as 2004 and renewed in the annual insurance contracts thereafter. But Billy Neal Shannon, his contractual relationship did not begin until 2011. So they're not continuous. They entered into these separate contracts at times completely different, seven years apart. And so when you have that kind of disconnect, I would say that does not fall under the definition of a single transaction. In other words, they renewed their crop insurance with Billy Max on several occasions, is that correct? That is correct. All right, now, does that give it continuity? Because there are more than one insurance, more than one transactions with respect to insurance coverage? I believe it does. I believe it gives continuity. So you're saying that even though there were one, only one individual, one victim of the predatory acts, that the fact that it occurred on several occasions over a period of time would give it the continuity it needed? I would make the distinction that there is more than one victim and then answer your question that, yes, it would give it the continuity it needed because this contractual relationship is renewed on an annual basis. And so this is- That leads me to the question, and maybe I don't know how relevant it is to the issues for us today, but the allegations are that on more than one occasion, several occasions, he made major mistakes with respect to insurance coverage. And so why did they not stop dealing with him? The man, they're saying this man was just making bad decisions and bad decisions after bad decisions and we just kept on? I mean, were they blind to what was going on? They may have been. They began noticing these mistakes about 2011 and 2012. Well, they began noticing them. It was earlier than that that they said he failed in this instance, he failed in that instance. The crop wasn't covered here. He used the wrong technology, the wrong technical words. Here in the contract, he just didn't know what he was doing and it cost us $100,000 or more. And it just seems like that anybody that was attendant to their business would have immediately known, look, we need to stop doing business. This man doesn't know what he's doing. Why didn't that happen? Well, I think an important fact here, too, is that this is in Crosby County, Texas. There aren't a whole lot of options. People are more blind and- Well, there's just not as competitive a market, say, as in New Orleans. Did Billy Ann have his own insurance agency? Billy Neil, he started his own insurance agency towards the tail end of what was going on. Well, as I was trying to read the complaint, it looked to me as if most of your allegations of actionable conduct had occurred around 2011, 12, 13. So when did Billy Ann set up his own agency? I believe it was 2011 that he started that process. Is that what's driving this case, is competitors? No, not at all, Your Honor. Billy Neil started his own insurance agency, going back to that fact that you asked earlier. There's not a competitive market there in the area for competent- Is Billy Neil licensed himself? He is now, yes. Do you have to have a license to sell this kind of insurance? Yeah, you have to have a license, a general license, and then you also have to be specifically licensed by the Texas Department of Insurance to sell crop insurance. Did Kirk have a license? Kirk did, yes. Okay. And the fact, though, that Mr. Hamm did not have a license is significant because of his stature in the community. He is the president of the Citizens National Bank there in Crosbyton, one of only one or two banks there in the county. So if you want a loan, you likely have to go through him. He's a well-known figure in the community, and he uses that stature to help drive business through the Kirkenham Insurance Agency. What's the difference between this claim and all the other claims you make, some of which are under the Deceptive Trade Practices Act and the Texas Insurance Code? You wanted a federal forum, is that a major reason? Well, this claim, we saw that it did meet, in our opinion, the elements of a RICO claim. And so because it met the elements, we thought that our clients— Doesn't it more clearly meet the elements of a DTPA or Texas Insurance Code violation? If that is the case, it's because RICO is so complicated and not— Oh, yeah. We're struggling with this also here. But— You didn't want to be in state court, is that part of it? No, I think we saw the opportunity of pursuing a RICO claim. We thought that the elements and the facts of this case met the requirements. And therefore, we had to file in federal court to pursue that RICO claim. Attorneys' fees paid under RICO and not under state law claims. Yes, they are. Yeah, attorneys' fees are paid under RICO. However, we've also asserted a breach of contract claim. And attorneys' fees under the Texas Civil Practices and Remedies Code are payable under breach of contract claims as well. And under the DTPA. And treble damages under the DTPA. And comparable damages under the Texas—I was just wondering. Yeah, that's correct. And so— Well, let me just ask you. Because you had all these, you know, statements in your complaint. And then you were required to file a RICO case statement. And there are more allegations in the case statement that you never amended your pleading with. That's correct. And we were sort of caught off guard with the granting of the motion to dismiss shortly after we filed the RICO case statement. It wasn't very long after we filed the requested RICO case statement that the motion to dismiss was granted. And in the RICO case statement, which is intended to help the judge decide whether this is a RICO case, we show—we get into more of the particular facts for a lot of the emails that were sent. We reference the dates of about a dozen emails that were used by Mr. Hamm in his capacity. Or his supposed capacity as a crop insurance agent, thereby using the wires to execute his scheme to defraud. And so it is appellant's position that because— at least under any definition of single transaction that I'm familiar with, this case does not contemplate a single transaction. The court should move to the open and closed period analysis set forth in the Supreme Court's H.J. Inc. Counsel, would you help me a little bit with the law? I know that this case was decided on the single transaction theory. But let's say that there was two transactions. Educate me a little bit. Would that necessarily mean, if there were two transactions, the fact that it's not a single and let's say there was two transactions, would that necessarily mean that the pattern and continuity would be established? It would not. All it would mean is that the court would then be required to engage in the open and closed period analysis set forth in H.J. Inc. by the Supreme Court and subsequently implemented by this court. The closed period analysis states that if the alleged predicate acts or fraudulent activity are a series of related predicates and they extend over a period of time, then it's a closed period and there is continuity. And so here, you have the substantial period of time element extending from 2004 to 2013 and you also have the relatedness element, which the relatedness element requires that they have the same or similar purposes, results, participants, victims, or methods of commission. And that comes from Judge Jones' opinion in Word of Faith, that 1996 case. And here, you have the same results. You have the appellants signing up for insurance from an insurance agent who they thought was licensed to sell crop insurance, who was not. You have the same participants. It's Mr. Max Ham, his insurance agency partnership, Kirkenham Insurance, doing business out of Citizens Bank, at times using Citizens Bank letterhead. You have the same victims and you have the same methods of commission of the predicate acts. And so the relatedness element of the closed period is met and also the substantial period of time is met. Because of those two things, it's a closed period and the continuity element of the pattern element of a RICO claim is therefore met in this case. Even if it were not met, say the court felt that it wasn't a substantial period of time, I think it's hard to say that nine years is not a substantial period of time. How far back can you—I mean, limitations runs only back to 2009 or 10, right? That's correct. Okay. How do you get the previous five years into this picture? Well, the— Did the Supreme Court say it? I could be just forgetting. These fraudulent—this scheme to defraud didn't accrue until it was consummated by use of the wires and the mails. And so at least as early as 2004, we have that fraudulent statement. And I think, too, going to the limitations question, I think the limitations would be—would apply where the—towards the end of the predicate acts because you need multiple predicate acts to establish a pattern. And so the 2004, if that were the only fraudulent statement and that were it, yeah, it probably would be subject to limitations. But because there were subsequent predicate acts and consummation of those predicate acts using the wires and the mails, then there is no limitations issue. But the 2004 is important because it does establish the substantial period of time element of the continuity element of the pattern element. The—I would also note that even if— this satisfies also the elements of an open period. You know, in H.J. Inc., which set forth the open-closed period analysis, court used an example of, you know, a few assaults or robberies taking place over the course of a few weeks. But here you have an established business engaging in the sale of insurance. And so you do have the threat of continued activity. I'll reserve the balance of my time. Thank you. Yes, sir. Thank you, Mr. Slade. Mr. Riney, we'll hear from you. Representing Bobby Max Ham. Yes, Your Honor. Tom Riney representing Bobby Max Ham, Terry Kirk, and the insurance agency of Kirk and Ham. In this court's opinion last June in the Zastro v. Houston Imports case in affirming a summary judgment, it characterized Mr. Zastro's claim as a breach of contract claim dressed in civil RICO garb. We suggest here that the Shannons' claim is merely a negligence claim dressed in civil RICO garb. The trial court properly dismissed the Shannons' claim and should be affirmed on four grounds. First of all, the Shannons did not plead sufficiently factual matter to state a plausible claim for relief. Secondly, they didn't plead fraud with particularity. Third, there was no pattern of racketeering activity pleaded specifically with respect to the continuity element. And finally, there was no pleading that showed that the predicate acts, any type of violation of RICO, approximately caused the damages claim. To the contrary, the pleading showed that the damages that they claim were caused by negligent acts. Now, we have a little bit of a different situation in the ordinary 12 v. 6 dismissal here because the dismissal did not come until after there had been more than six months of discovery. In fact, the RICO case statement that was filed some six or seven months after the suit was filed actually included the plaintiff's expert or the Shannons' expert reports that was based upon the discovery done in the case. So we have that benefit of a very, very factual background in the RICO case statement that shows that this is a negligence case because their own experts specifically refer to negligent acts, breaches of standards of care, and say that is what caused the damages that the Shannons see. They specifically reference negligence in administration of insurance policies. When you say that it's really cloaked in negligence, did Mr. Hamm have a license to sell insurance? Yes, he did, Your Honor, at all times. Did he have a license to sell crop insurance? According to my research, there is no such thing as a crop insurance license. First of all, the Texas Department of Insurance regulates the sale of insurance in Texas and it regulates who can sell insurance. There are things such as general lines license and limited lines license. Now, Mr. Hamm at all times has and still has a general lines license. Crop insurance is purely a federally regulated type of insurance. There is nothing with the Texas Department of Insurance that says that someone is licensed to sell crop insurance. Mr. Kirk, and I would point out there has never been a suggestion that Mr. Kirk was not properly licensed to sell crop insurance or that he was not properly appointed an agent of a crop insurance company. The case was, which we're going to go on the pleadings here, alleged that he wasn't authorized to sell crop insurance. Now, whether he was or he wasn't, there is an allegation that he wasn't. Now, if he's telling people that he's selling it and he's not licensed, how is that negligent? How is that just not a false statement? If, first of all, thank you. Assume with me, if we assume for just a second that he made the statement, I am licensed to sell crop insurance and he wasn't, then under those circumstances, that is a misrepresentation. But the damages that they claim arise not from that misrepresentation, but by their own pleadings, by the negligence in the administration, primarily claims handling, of the insurance agency process. But there was never... My reading of it, I guess it may be a liberal reading of it, was that they relied upon his representation as an expert to do business with him and he didn't have the expertise that he stated that he had and that would be the misrepresentation that they relied on and that caused their damages. I think primarily they are saying that he was not licensed. But if you go to the qualifications, that is probably not a misrepresentation of a fact. They admit they had been doing insurance business with him since 2004, at least Mr. and Mrs. Billy W. Shannon. So the misrepresentation of the fact would have to be that I am authorized to sell crop insurance when I'm not. But it's undisputed that the parents had crop insurance through this agency for a long period of time and yet no damages are claimed in the complaint until years 2011 and 2012. Did you say Ham did have an insurance license? Yes, he did. A General Lines license. So that's the whole basis of their complaint. Well, and I'm trying to stay on what they've pleaded, but they've pleaded that he was not licensed. Well, it seems to me, yeah, but if that, I mean, if that, if, okay. If it's not true, that would have been ground for a very quick summary judgment, right? Because that's the whole basis of their complaint. I think that would be, that would be accurate, Your Honor. Okay. All right, the, let me address just for a moment, there has never been an allegation that Kirk and Ham was not authorized by a crop insurance company to sell crop insurance. And, in fact, it's implicit in their pleadings that they did, Kirk and Ham, obtain crop insurance for the Shannons because their damage claims are not that they didn't obtain insurance coverage for us, rather it is we didn't get paid what we think we should be getting paid under the crop insurance policies. So that, I think, kind of goes to the issue about, well, what was the misrepresentation? If someone, it would be an entirely different situation if someone said, I am authorized by, let's say, Rain and Hail Crop Insurance Company to write insurance coverage for me. If you give me the premium, I'll get you that coverage. When, in fact, there is no such relationship and they're unable to obtain the coverage. All the pleadings established that their claim was not for a misrepresentation that it came from a dissatisfaction with the amounts. Yes, Your Honor. Also, in terms of the predicate action, let me address the... I thought their claim was they were dissatisfied with the amounts because he did not properly sell the right kind of insurance to them or advise them of the pitfalls of the insurance policies involved. There were two aspects. That would be one of them, that he didn't advise us right on the coverage, and secondly, there were some claims handling practices that they said were the crux or the cause of their damages. As far as the single transaction, I don't think there is a clear-cut definition in the cases as to what is a single transaction. Rather, I think we have to take a look at what the opinions say about continuity. And the key issue, I believe, it is the continuity of the criminal conduct that allows that continuity factor. We know in some respects what a single transaction... In other words, that a series of events can still be a single transaction, even though there are multiple events. We see that in the Word of Faith case. A single transaction included not only preparing a TV program and producing, actually airing that TV program, but then several months later, there were some modifications to the program, and it was rebroadcast. Under the Shannon's argument, that would be a series of transactions, and yet the court properly held, no, that was a single transaction. That is, that it was the... I mean, there's another way to look at it, especially on a motion to dismiss, and that is that there were many transactions, and there are transactions every year that they purchased crop insurance and changed their policies some, or were told that they could have this kind of coverage this year and another kind next year. They signed up for it differently. There are several transactions over a period of time. But within the definition that this court has given for the purpose of RICO claims, it's that focus on continuity of criminal activity. Well, that would be, and I think they allege, that every time they bought insurance from him, he continued to make some sort of representation, implicit or explicit, that he was an expert in this field and he was, as they say, licensed to sell crop insurance and they relied on it each year in each transaction over a period of time. Plus, there were two separate, according to the pleadings, two separate independent companies, or operations, and three separate individuals. I mean, it leads me to the question, what if we decided that this did not meet the single transaction, single transaction exception, what alternative basis would you suggest that can it be affirmed on that was presented to the district court? That there were not sufficient predicate acts pleaded. The only predicate acts were 2004 and 2011. Excuse me, that's when the misrepresentations were made. They affirmatively alleged those two times he misrepresented that he was a licensed and qualified crop insurance agent. So there were only two acts of racketeering activity. Well, no, those were two acts of misrepresentation, but both of those were in meetings. They were not use of wire fraud or mail fraud. The predicate criminal acts as opposed to racketeering, I mean, I suppose is different from, when you speak of pattern of racketeering, you speak differently than a pattern of predicate acts, maybe. Well, I think the predicate acts must be the criminal violations. Here, that'd be wire fraud or mail fraud. So an additional reason that I would say is that they have not pleaded that those were used to execute the fraud. To the contrary, they already had some policies. The emails that they talk about, they're limited, basically, to a period of 2012 to 2014, but they never show how those emails or letters executed this plan of fraud. That is the key issue, well, I think one of the key issues that's missing and why it would be appropriate to affirm on that ground. And finally, the fraud is not alleged with particularity as it relates to the predicate acts. Again, we have a series of dates of emails in 2011 and 2012, but without sufficiency to show that this was a consummation of a plan to defraud. And finally, we think that their own pleadings through the RICO case statement show that the proximate cause was negligent, not any type of misrepresentation. Okay. Thank you, Mr. Riney. Mr. Jones, we'll hear from you. Representing Bobby Max Ham and Citizens Bank. Citizens Bank, I guess you are. Thank you. May it please the Court, Marvin Jones, I represent the bank entities here and not necessarily Mr. Ham individually, as Mr. Riney's client. And I'll only address, really, the allegations that are specific to the bank entities. And those allegations relate to financial institution fraud as compared to the mail fraud allegations. And I think there's three important points there. One is the allegation of a financial institution fraud is limited to a single act. And that single act is in October of 2013 or so, the bank received a deposit from one of the plaintiffs here, actually the Billy W. Neal Shannon and Fannie Shannon. And two days later that deposit was put into one of their accounts. The claim is, of course, that there was some delay in making that deposit. And the delay according to the pleadings amounts to some kind of financial institution fraud. Taking that as true, which we must under the standards here, the allegations still do not establish a pattern of financial institution fraud. There is only one instance. There is certainly no continuity. There's no pattern. Secondly, there's just no relatedness to the mail fraud allegations at all. This financial fraud allegation, if true, does not do anything to advance the mail fraud that has been alleged. It does nothing to advance the insurance agency issues upon which the plaintiffs almost singularly rely, particularly in their reply brief here. They do allege that he used the letterhead of the bank to do insurance business. They allege that he used the offices of the bank as offices for the insurance agency, but that still does not connect the bank to the mail fraud issues that have anything to do with the insurance agency or representations that Mr. Hamm is a licensed crop insurance agent. Certainly Mr. Hamm is the president of the bank, but he's also a partner in the insurance agency, and although the allegations are somewhat vague in that respect, they do not actually link the bank itself to any kind of benefit or any kind of participation in a fraud. You're saying there wasn't any bank action associated with it, that just the fact that he was the president of the bank and used their letterhead does and comprise evidence that you're a participant in the RICO claim. That's precisely what I'm saying, that there's no nexus between the fact that Mr. Hamm was president of the bank or that Mr. Hamm coincidentally, as it were, used No explanation of how the bank as a banking entity participated and furthered the objectives of this alleged RICO scam. Correct, and I think that's the crux of the matter right there is how does the bank benefit from this fraud? How does it participate in any way whatsoever in the insurance? Well, you wouldn't have to benefit from it, would you? If the bank was a participant, what difference does it make that the bank benefited in it or not? If it was a schemer and helped cause it and was participating, do you have to make money out of it in order to be a beneficiary? Of course not, but that would take us to this court's case, this court's decision in 1986 in the Armco matter where Mr. Conklin certainly was in the orbit of the activities that were taking place yet this court held that he could not be tied to a RICO violation because he had not actually committed any of the violent acts of mail fraud upon which He didn't show that he was a participant, but it wasn't grounded upon, well, he didn't make any money out of it. Well, correct. He didn't have anything to gain. And I would agree, you don't necessarily have to benefit from the activity, but here there's just no nexus between being a bank or being the president of the bank or using bank stationary to transmit a message and the So I think at best the pleadings that we're looking at would put the bank in the position of Mr. Conklin in the Armco case and there's certainly not enough there to hold the bank as a certainly the financial institution fraud issues don't get you there and I don't think any of the other allegations rise to the level that would get past the Armco case. If there are no other questions. Okay. Thank you, Mr. Jones. Mr. Slade, you've saved some time for a vote. Counsel, real briefly, if you can, how do you get the bank to be a participant? Are you relying solely on the letterhead? Not solely on the letterhead. Max Hamm was the president of the bank. He sent mail, insurance, crop insurance information out on bank letterhead. The insurance agency partnership office in the bank. Did they ever buy, they didn't buy insurance from the bank. They didn't, they were dealing with Hamm as a insurance policies that they did get. Did they, was the bank part of it or anything like that? They never bought insurance from the bank, but they used the bank to drive bank customers to the Kirk and Hamm insurance agency partnership. Well, when you stood up here originally, you told us that the reason they were using the partnership is A, the bank is the only one in the county, or one of two, and B, it was the only agency. You weren't saying it was because the bank had driven them to use it. Well, they could, that doesn't mean they have to use the bank. I'll bet you didn't plead that either. That they used the bank to, I believe we pleaded that they used the bank's customers to get, I believe we did. Okay. I do. Let me ask you, did Mr. Hamm have an insurance license? He did not. He had, he did have, well, he had a general lines insurance license, but to sell crop insurance, you need an additional certification, and that may be my fault. I don't think I was clear on that. No, you certainly weren't. And so my head cleared when I sat down, but it is true that you need an additional certification to sell crop insurance. Well, nothing in your pleading says that. Your whole pleading says he didn't have a license. It says that he wasn't licensed to sell crop insurance, that he made a fraudulent statement. What makes it certification? I believe it's the Texas Department of Insurance. You believe? Yeah. There is Rule 11. I mean, these are very stern allegations, and you could have looked that up. And I have looked it up. I've consulted other insurance sales persons and other insurance agents, and based on their statements on information and belief, we pled that. Yes, Your Honor. But counsel, opposite, has said that his search shows that there's no such certification required or such special license required to sell crop insurance under Texas law. Well, one of this is incorrect, and we are correct. You're saying we don't attorney. And I'll point out too that he was, I think he knows that an additional certification is required. Why don't you, why doesn't each of you give us a Rule 28J letter and just state what the law is? I would be happy to do that. Because after all, you had your pleadings, and you said he didn't have a license. Then you had your RICO statement, and now you're telling us it wasn't the license, it was a separate certification. But you do need that additional certification. You know what? I'm not prepared to disagree with you, but you're going on and on in a very vague way, and I'm sure there must be a regulation about it somewhere. I'm sure there must be as well. I don't know that regulation. I'd like to take the balance. That is sort of the basis of your complaint, is it not? It is, and I've spoken to crop insurance agents who have told me that you do need a certification. That has not been alleged. So if the whole basis of your complaint is that the fraudulent misrepresentation was that he was not licensed, and now you're saying he didn't have to be licensed, it seems like you've conceded a major part of your case. No, because he stated, I am licensed to sell crop insurance. Now, that's a fraudulent statement if he doesn't have all the certifications under the law he needs. Well, he is licensed to sell insurance which embodies crop insurance. If he says I'm licensed to drive you and 10 of your friends to a football game 20 miles away and he doesn't have a commercial vehicle license, you can look that up in the DMV. And all we're saying is you ought to be able to look up in some kind of Texas registry or federal regulations governing the crop insurance program what every certification might be required for crop insurance. And that, the letter that you requested, we're happy to provide and to further brief that issue. That would be big help. Okay. Can I take some time to rebut some of the points that were made? Well, you've got We'll give you another minute to do that. Go ahead. Okay. The appellees made a point that there's no proximate cause between the fraudulent statements and the injury. That it's really just a negligence claim. Well, this court held in Bridge v. Phoenix that I believe that's a 1980 case. This court held that reliance alone in some instances can be proximate cause. The fact that plaintiffs did rely, as pleaded in the complaint, on the fraudulent statements. They wouldn't have gotten crop insurance from them were it not for those statements. The fact that plaintiffs did rely on those statements and the fact that plaintiffs are part of the zone of interest that this statute is intended to protect means that there is proximate cause there. And I would just pose one quick hypothetical. Say if it were a person practicing medicine claiming to be a licensed doctor when they were not and then they didn't operate correctly well that would be more than just a negligence claim it would be a fraud claim. And while the stakes with health care may be higher than the stakes here, I think those stakes bring the issue into sharper relief for us rather than being distinguishable. Thank you. Thank you, Mr. Slade. That completes the arguments we have on the oral argument calendar for today. So this panel stands in recess.